# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DOMONIQUE MCNEELY, as Personal
Representative for the Estate of
ROBBIN MCNEELY, Deceased,

       Plaintiff,

v.

D/LT. JOHN DUFFY, D/SGT.
PATRICK MOORE, D/TPR. DAN
RICHTER, D/TPR. BRIAN SAVARD,
D/LT. JEREMY BREWER, TROOPER
BRANDEE HART, DET. ANDREW
BABCOCK, DET. ANTHONY,
BROOKS, D/LT. BRIAN WARDEN,
SGT. DAVE POWELL, DET. DOUG
McLEOD, DET. ERIC FREEMAN,
D/SGT. STEVEN COLOSKY, OFF.
MATT JENSEN, OFF. ERIC EARNS,
DET. TYLER DUNKLEE, DET.
MATT HARBURN, DET. JOHN
BADAL, DET. RANDY FORMAN,
and DET. TYLER STAMBAUGH,
in their individual capacities,

       Defendants.

Case No. 2:23-cv-10220
Hon. Denise Page Hood

{01440205.DOCX}

JAMES J. HARRINGTON, IV (P65351)
JENNIFER G. DAMICO (P51403)
Fieger, Fieger, Kenney & Harrington, PC
Attorneys for Plaintiff
19390 West 10 Mile Road
Southfield, MI 48075
(248) 355-5555
Fax: (248) 355-5148
j.harrington@fiegerlaw.com
j.damico@fiegerlaw.com

MARY A. WADDELL (P70545)
RYAN WIER (P83886)
MI Dept. of Attorney General
State Operations Division
Assistant Attorneys General
Attorneys for Def, Duffy
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
waddellm1@michigan.gov
wierr@michigan.gov

AUDREY J. FORBUSH (P41744)
Plunkett Cooney
Attorney for Defs Babcock, Brooks,
Warden, Powell, McLeod, Colosky,
Earns, Jensen & Freeman
111 E. Court St., Ste. 1B
Flint, MI 48502
(810) 342-7014
Fax: (810) 232-3159
aforbush@plunkettcooney.com

---

## SECOND AMENDED COMPLAINT

NOW COMES, Plaintiff, DOMONIQUE MCNEELY, as Personal Representative for the Estate of ROBBIN MCNEELY, by and through her attorneys, FIEGER, FIEGER, KENNEY & HARRINGTON, P.C., and for her Second Amended Complaint and Demand for Trial by Jury against the above-named Defendants, Plaintiff hereby states as follows:

## PRELIMINARY STATEMENT

This action arises from a January 30, 2020, incident where a multi-jurisdictional narcotics task force from the Michigan State Police, Burton Police Department, Grand Blanc Township Police Department, Flint Township Police Department, Mt. Morris Township Police Department, Metro Police Authority of Genesee County, and Davison Township Police Department, called Flint Area Narcotics Group ("FANG"), and officers from the Cities of Flushing and Burton Police Departments, executed a probable cause search warrant, at 3607 Suffolk Court in Flushing, Michigan, in connection with an investigation involving ROBBIN MCNEELY's son.

The overly aggressive officers stormed into ROBBIN MCNEELY'S home, unlawfully threw her to the ground, restrained her in a prone position, with her hands cuffed behind her back, while applying downward compressional force to her back, legs, torso, shoulders and/or neck, rendering her unable to adequately breathe, or her lungs to exchange oxygen, or her heart to pump blood, or her circulatory system to otherwise function properly.  ROBBIN MCNEELY never resisted or obstructed the Defendants, nor did she ever pose risk of harm or flight.  She told all officers that she felt ill and was having difficulty breathing.  The Defendants unreasonably restrained ROBBIN MCNEELY in a prone position as she struggled to breathe and was in obvious need of immediate emergency medical attention.  Eventually, ROBBIN

MCNEELY was taken outside of the home, where she began to drool and urinate. The Defendants finally called emergency medical services – approximately 40 minutes from when she was forcefully taken to the ground and immobilized in prone position.  ROBBIN MCNEELY became unconscious, and ultimately died at Hurley Medical Center from a preventable and predictable medical complication due to the aggressive Defendants who killed her by their unreasonable, excessive force and failure to provide her with reasonable and necessary medical care.

## JURISDICTION

1.     This action arises under the United States Constitution, particularly under the provisions of the Fourth and Fourteenth Amendments, and under the laws of the United States, particularly under the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988, and under the statutes, common law, and Model Penal Code of the State of Michigan.

2.     This court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 (a)(3), 1343(a)(4) and 42 U.S.C § 1983. This court has supplemental jurisdiction of the Michigan law state claims which arise out of the nucleus of operative facts common to Plaintiff's federal claims pursuant to 28 U.S.C. §1367.

3.     The amount in controversy greatly exceeds seventy-five thousand dollars, excluding interests, costs, and attorney fees.

## **VENUE**

4.     Venue lies in the Eastern District of Michigan pursuant to 28 U.S.C §

1391(d), the events took place in the City of Flushing, County of Genesee, State

of Michigan, which is located within the jurisdiction of the United States District

Court for the Eastern District of Michigan, Southern Division.

## **PARTIES**

5.     At all times relevant to this lawsuit, Plaintiff's decedent, ROBBIN

MCNEELY, was a resident of the City of Flushing, County of Genesee, State of

Michigan.

6.     At all times relevant, Defendant, D/LT. JOHN DUFFY, formerly

identified as "D/ LT FANG OFFICER #2 ███████ ███████, (MSP)" and

"FANG OFFICER DT/LT JOHN DUFFY" in Plaintiff's First Amended Complaint,

was a citizen of the State of Michigan and was acting under the color of state law

within the course and scope of his employment as sworn police officer with the

Michigan State Police.

7.     At all times relevant, Defendant, D/SGT. PATRICK MOORE, formerly

identified as "D/ LT FANG OFFICER #3 ███████ ███████, (MSP)" and

"FANG OFFICER DT/SGT PJ MOORE" in Plaintiff's First Amended Complaint,

was a citizen of the State of Michigan and was acting under the color of state law

within the course and scope of his employment as sworn police officer with the

Michigan State Police.

8.     At all times relevant, Defendant, D/TPR. DAN RICHTER, formerly identified as "D/ LT FANG OFFICER #4 ███████ ███████, (MSP)" and "MIGHIGAN STATE POLICE TROOPER 1-10" in Plaintiff's First Amended Complaint, was a citizen of the State of Michigan and was acting under the color of state law within the course and scope of his employment as sworn police officer with the Michigan State Police.

9.     At all times relevant, Defendant, D/TPR. BRIAN SAVARD, formerly identified as "D/ LT FANG OFFICER #5 ███████ ███████, (MSP)" and "MIGHIGAN STATE POLICE TROOPER 1-10" in Plaintiff's First Amended Complaint, was a citizen of the State of Michigan and was acting under the color of state law within the course and scope of his employment as sworn police officer with the Michigan State Police.

10.     At all times relevant, Defendant, D/LT. JEREMY BREWER, formerly identified as "MIGHIGAN STATE POLICE TROOPER 1-10" in Plaintiff's First Amended Complaint, was a citizen of the State of Michigan and was acting under the color of state law within the course and scope of his employment as sworn police officer with the Michigan State Police.

11.     At all times relevant, Defendant, TROOPER BRANDEE HART, formerly identified as "FANG OFFICER #12 ███████ ███████, (MSP)" and

"MIGHIGAN STATE POLICE TROOPER 1-10" in Plaintiff's First Amended Complaint, was a citizen of the State of Michigan and was acting under the color of tate law within the course and scope of her employment as sworn police officer with the Michigan State Police.

12.    At all times relevant, Defendant, DET. ANDREW BABCOCK, formerly identified as "FANG OFFICER #1 ███████  ███████, (MSP)" and "FANG OFFICER ANDREW BABCOCK" in Plaintiff's First Amended Complaint, was a citizen of the State of Michigan and was all acting under the color of state law within the course and scope of his employment as sworn police officer with the City of Burton Police Department.

13.    At all times relevant, Defendant, DET. ANTHONY BROOKS, formerly identified as "FANG OFFICER #6 ███████  ███████, (BURTON PD)" and "DETECTIVE ANTHONY BROOKS" in Plaintiff's First Amended Complaint, was a citizen of the State of Michigan and was all acting under the color of state law within the course and scope of his employment as sworn police officer with the City of Burton Police Department.

14.    At all times relevant, Defendant, D/LT. BRIAN WARDEN, was a citizen of the State of Michigan and was all acting under the color of state law within the course and scope of his employment as sworn police officer with the City of Burton Police Department.

15. At all times relevant, Defendant, SGT. DAVE POWELL, was a citizen of the State of Michigan and was all acting under the color of state law within the course and scope of his employment as sworn police officer with the City of Burton Police Department.

16. At all times relevant, Defendant, DET. ERIC FREEMAN, was a citizen of the State of Michigan and was all acting under the color of state law within the course and scope of his employment as sworn police officer with the City of Burton Police Department.

17. At all times relevant, Defendant, D/SGT. STEVEN COLOSKY, was a citizen of the State of Michigan and was all acting under the color of state law within the course and scope of his employment as sworn police officer with the City of Burton Police Department.

18. At all times relevant, Defendants, OFF. MATT JENSEN, was a citizen of the State of Michigan and was all acting under the color of state law within the course and scope of his employment as a sworn police officer with the City of Flushing Department.

19. At all times relevant, Defendants, OFF. ERIC EARNS, was a citizen of the State of Michigan and was all acting under the color of state law within the course and scope of his employment as sworn police officer with the City of Flushing Department.

20.     At all times relevant, Defendant, DET. TYLER DUNKLEE, formerly identified as "FANG OFFICER #9 ███████ ███████, (MT. MORRIS TWP. PD)" and "OFFICERS JOHN DOES 1-10" in Plaintiff's First Amended Complaint, was a citizen of the State of Michigan and was all acting under the color of state law within the course and scope of his employment as sworn police officer Mt. Morris Township Police Department.

21.     At all times relevant, Defendant, DET. MATT HARBURN, formerly identified as "FANG OFFICER #7 ███████ ███████, (GRAND BLANC TWP PD)" and "OFFICERS JOHN DOES 1-10" in Plaintiff's First Amended Complaint, was a citizen of the State of Michigan and was all acting under the color of state law within the course and scope of his employment as sworn police officer with the Grand Blanc Township Police Department.

22.     At all times relevant, Defendant, DET. JOHN BADAL, formerly identified as "FANG OFFICER #10 ███████ ███████, (METRO POLICE AUTHORITY)" and "OFFICERS JOHN DOES 1-10" in Plaintiff's First Amended Complaint, was a citizen of the State of Michigan and was acting under the color of state law within the course and scope of his employment as a sworn police officer with the Metro Police Authority of Genesee County.

23.     At all times relevant, Defendant, DET. RANDY FORMAN, formerly identified as "FANG OFFICER #11 ███████ ███████, (DAVISON TWP. PD)"

and "OFFICERS JOHN DOES 1-10" in Plaintiff's First Amended Complaint, was a citizen of the State of Michigan and was acting under the color of state law within the course and scope of his employment as a sworn police officer with the Davison Township Police Department.

24.     At all times relevant, Defendant, DET. TYLER STAMBAUGH, formerly identified as "FANG OFFICER #8 ███████ ███████, (FLINT TWP PD)" and "OFFICERS JOHN DOES 1-10" in Plaintiff's First Amended Complaint, was a citizen of the State of Michigan and was acting under the color of state law within the course and scope of his employment as a sworn police officer with the Flint Township Police Department.

25.     At all times relevant, Defendants, LT. JEREMY BREWER, D/LT. JOHN DUFFY, D/SGT. PATRICK MOORE, D/TPR. DAN RICHTER, D/TPR. BRIAN SAVARD, TROOPER BRANDEE HART, DET. ANDREW BABCOCK, DET. TYLER DUNKLEE, DET. MATT HARBURN, DET. JOHN BADAL, DET. RANDY FORMAN, and DR. TYLER STAMBAUGH, were all acting members of the Flint Area Narcotics Group ("FANG") (collectively referred to as the "FANG Defendants" herein).

26.     The FANG Initial Case Report and all Supplemental Reports ("FANG Report") were produced by the State of Michigan, through its agents and/or employees, the Michigan State Police.

27.     The FANG Report was heavily redacted and the identities and the law enforcement agencies for which the individual FANG Defendants were employed was unknown to Plaintiff until May 11, 2023, when counsel for the known FANG Defendants and other involved officers agreed to produce the unredacted FANG Report.

## **FACTUAL STATEMENT**

28.     Plaintiff hereby reincorporates and reasserts each and every allegation set forth in the previous paragraphs of this Complaint.

29.     At all times relevant ROBBIN MCNEELY (referred to as Plaintiff's decedent, or ROBBIN MCNEELY, hereinafter) resided at 3607 Suffolk Court in Flushing, MI.

30.     At all times relevant, ROBBIN MCNEELY was prescribed multiple medications for various reported health conditions including but not limited to osteoarthritis, diabetes, congestive heart failure, hypertension, chronic obstructive pulmonary disease, pulmonary hypertension, sleep apnea, GERD and obesity.

31.     The medications being taken by ROBBIN MCNEELY were, at all times relevant, out in the open and in plain sight at her approximate 1000 square foot, two-bedroom apartment, including her nebulizer machine for her COPD and pulmonary hypertension.

{01440205.DOCX}                                                11

32.    At all times relevant, ROBBIN MCNEELY had a pacemaker manufactured by Boston Scientific Momentum CRT-D, implanted in her chest, to deliver electrical shocks to regulate and defibrillate irregular heart rhythms and arrythmias.

33.    Upon all information and belief and on or about January 30th, 2020, Defendant DET. ANTHONY BROOKS from the Burton Police Department drafted a probable cause search warrant (the "warrant") for the 3607 Suffolk Court address for ROBBIN MCNEELY'S son.

34.    That upon information and belief, Defendant, DET. DOUG MCLEOD, was the highest-ranking officer for the Burton Police Department, and officer-in-charge of the investigation into alleged criminal activity of ROBBIN MCNEELY'S son.

35.    Upon all information and belief, at approximately 14:00 on January 30, 2020, FANG was contacted by Defendants, DET. ANTHONY BROOKS or DET. DOUG MCLEOD, to assist the Burton Police Department in the execution of the warrant at ROBBIN MCNEELY'S home

36.    Upon information and belief, Defendants, D/SGT. PATRICK MOORE, D/LT. JOHN DUFFY and DET. ANDREW BABCOCK, were the FANG Defendants in charge of the planning, risk assessment and execution of the warrant at ROBBIN MCNEELY'S residence, which included the coordination of

wearing matching black tactical FANG vests, and other tactical gear and equipment.

37.    That all above-named FANG Defendants did in fact enter ROBBIN MCNEELY'S home at 17:00 on January 30, 2020, after Defendant, D/LT. JOHN DUFFY used a tactical battering ram "make forceful entry into the residence" of ROBBIN MCNEELY.

38.    That in addition to the twelve (12) FANG Defendants, eight (8) more officers, Defendants, DET. ANTHONY BROOKS, DET. DOUG MCLEOD, DET. BRIAN WARDEN, SGT. DAVE POWELL, DET. STEVEN COLOSKY, DET. ERIC FREEMAN, OFF. MATT JENSEN, and OFF. ERIC EARNS, entered the approximate 1000 square foot, two-bedroom apartment, to execute the warrant.

39.    That all twenty (20) Defendants either participated in the seizure, arrest and detention of Plaintiff's decedent, ROBBIN MCNEELY, which included the unreasonable use of force in throwing her to the ground, handcuffing her in a prone position with her hands cuffed behind her back, and applying downward compressional force to her back, legs, torso, shoulders and/or neck, for a period of time after it was objectively unjustified to do so under the circumstances.

40.    Upon information and belief, Defendant, DET. MATT HARBURN, formerly identified as "FANG OFFICER #7 ███████ ███████, (GRAND BLANC TWP PD)" and misnamed as "OFFICER PYLE" in Plaintiff's First

Amended Complaint handcuffed, ROBIN MCNEELY, with her hands behind her back, in a prone position, while applying downward compressional force to her back, legs, torso, shoulders and/or neck, thereby restricting her ability to move and breathe as her lungs were restricted from properly exchanging oxygen and carbon dioxide.

41.    Upon all information and belief, while ROBBIN MCNEELY was in a prone position, immobile and restrained, she complained directly to Defendants, DET. MATT HARBURN, SGT. DAVE POWELL, D/LT. BRIAN WARDEN, OFF. ERIC EARNS, D/LT. JOHN DUFFY, and TROOPER BRANDEE HART, and upon information and belief, within the sight and hearing of all Defendants, that she could not breathe and/or was having difficulty breathing and felt ill.

42.    That upon further information and belief, Defendant, DET. MATT HARBURN, continued to forcefully restrain ROBBIN MCNEELY in an unreasonable position where her breathing was restricted and where she posed no justifiable risk of harm to the officers.

43.    That ROBBIN MCNEELY informed Defendants, who were all in the small apartment, that she had a medical conditions, took multiple medication and used medical devices, that were in plain view of the Defendants.

44.     That all Defendants either participated in the unlawful force application against ROBBIN MCNEELY, or alternatively, failed to intervene while her rights were being violated.

45.     That once ROBBIN MCNEELY was finally lifted from the ground, with her hands cuffed behind her back, she continued to complain that she felt ill, was having difficulty breathing and/or could not breathe.

46.     ROBBIN MCNEELY begged Defendants, including DET. MATT HARBURN, D/LT. JEREMY BREWER, D/LT. JOHN DUFFY, SGT. DAVE POWELL, D/LT. BRIAN WARDEN, OFF. ERIC EARNS, OFF. MATT JENSEN, and TROOPER BRANDEE HART, to use her nebulizer, that was on the kitchen table for all Defendants to plainly see, because she was having difficulty breathing, was still handcuffed, and could not administer the medication to herself.

47.     Because she was in obvious distress and in need of immediate medical attention, Defendants, TROOPER BRANDEE HART and D/LT. JOHN DUFFY, attempted to give ROBBIN MCNEELY a breathing treatment, by sticking the nebulizer "tube" in her mouth.

48.     The few "puffs" of the breathing treatment given by Defendants to ROBBIN MCNEELY while her hands remained cuffed behind her back, thereby restricting her lungs' ability to remove the carbon dioxide that was continuing

build up in her blood stream, and leading up to a catastrophic respiratory and/or cardiac event, was reckless and grossly inadequate in light of circumstances.

49.    ROBBIN MCNEELY stated that the puffs from her nebulizer did not make her feel better, and in fact, she was feeling much worse, was sweating profusely, and was experiencing chest pain in addition to struggling to breathe.

50.    ROBBIN MCNEELY posed no risk of harm to the Defendants nor any member of the public, and there was no objectively reasonable justification for Defendants to keep ROBBIN MCNEELY'S hands cuffed behind her back.

51.    Defendants' spurious attempts to provide ROBBIN MCNEELY medical treatment, but sticking a breathing tube in her mouth, when it provided her no relief, rather than calling immediately for emergency medical services, when they had subjective knowledge of her serious medical condition, or where her serious medical condition was obvious, amounts to an unconstitutional denial of medical care and treatment.

52.    Upon information and belief, ROBBIN MCNEELY'S breathing difficulty and chest pain continued to worsen, but the Defendants ignored her pleas for help while they completed their search of her home, and conducted interviews.

53.    After a grossly excessive and reckless amount of time passed, Defendants finally called for emergency medical services who arrived at 17:40.

54.     ROBBIN MCNEELY was then taken to her front porch by Defendants, D/SGT. STEVEN COLOSKY, OFF. ERIC EARNS and OFF. MATT JENSEN, while they waited for the ambulance to arrive.

55.     While on the front porch, ROBBIN MCNEELY could barely stand on her own.  As she leaned on the front porch pillar, she began drooling and urinated on herself.   It was only then did Defendants, D/SGT. STEVEN COLOSKY, OFF. ERIC EARNS and OFF. MATT JENSEN,  finally remove her handcuffs.

56.     The paramedics from Mobile Medical Response (MMR) arrived on scene at 17:40. In their report, they wrote: "Pt. was noted to be drooling from mouth and have urinated on herself" and further noted that ROBBIN MCNEELY was semi-conscious and unresponsive.

57.     The MMR report further states: "Pt. noted to have respirations of 12 breaths per minute."

58.     ROBBIN MCNEELY was transferred to Hurley Medical Center, breathing 10-12 breaths per minute, with administered CPR the entire ambulance ride.

59.     ROBBIN MCNEELY could not recover from the fatal arrythmia caused by Defendants numerous and prolonged violations of her constitutional

rights including excessive force and deliberate indifference to serious medical needs.

60.     All Defendants knowingly and intentionally failed to present ROBBIN MCNEELY to a hospital within a time frame that would have saved her because their goal was to fully and completely execute the search warrant at her home without regard for her life.

61.     ROBBIN MCNEELY ultimately died on January 30, 2020, from a respiratory or cardiac event that led to fatal cardiac arrest.

62.     The misconduct of all Defendants directly and proximately caused ROBBIN MCNEELY's death.

63.     That as a proximate result of the unlawful actions and unlawful inactions described herein, ROBBIN MCNEELY and the Estate of ROBBIN MCNEELY, suffered injuries and damages which include, but are not limited to the following:

   a.     Wrongful Death;

   b.     Reasonable medical, hospital, funeral and burial expenses;

   c.     Extreme conscious pain and suffering, physical and emotional;

   d.     Humiliation and / or mortification;

   e.     Mental anguish;

   f.     Economic damages;

g.   Loss of love, society, and companionship;

h.   Loss of gifts, gratuities, and other items of economic value;

i.   Parental guidance, training, and support;

j.   Exemplary, compensatory, and punitive damages allowed under Michigan and federal law;

k.   Attorney fees and costs pursuant to 42 USC § 1988; and

l.   Any and all other damages otherwise recoverable under federal law and the Michigan Wrongful Death Act, MCL 600.2922, *et seq*.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in her favor against Defendants and in an amount in excess of seventy-five thousand dollars ($75,000) exclusive of costs, interest and attorney fees.

## COUNT I - 42 U.S.C § 1983 - EXCESSIVE FORCE
### ALL DEFENDANTS

64.   Plaintiff hereby reincorporates and reasserts each and every allegation set forth in the previous paragraphs of this Complaint.

65.   At all times relevant hereto, Defendants, D/LT. JOHN DUFFY, D/SGT. PATRICK MOORE, D/TPR. DAN RICHTER, D/TPR. BRIAN SAVARD, D/LT. JEREMY BREWER, TROOPER BRANDEE HART, DET. ANDREW BABCOCK, DET. ANTHONY, BROOKS, D/LT. BRIAN WARDEN, SGT. DAVE POWELL, DET. DOUG McLEOD, , DET. ERIC FREEMAN, D/SGT. STEVEN COLOSKY,

OFF. MATT JENSEN, OFF. ERIC EARNS, DET. TYLER DUNKLEE, DET. MATT HARBURN, DET. JOHN BADAL, DET. RANDY FORMAN, and DET.TYLER STAMBAUGH,  directly and proximately were acting under the color of state law, in their capacity as officers of the law, and their actions were conducted within the scope of their official duties and employment.

66.     Plaintiff's decedent, ROBBIN MCNEELY, had the clearly established right under the Fourth and Fourteenth Amendments to be free from excessive force by law enforcement.

67.     Under all circumstances known, the physical force used against ROBBIN MCNEELY was objectively unreasonable and clearly excessive when she was thrown to the ground onto her chest, hand-cuffed in a prone position, while the Defendants, including Defendant, DET. MATT HARBURN, applied downward compressional force for a period of time after she stated she was having difficulty breathing and chest pain.

68.     At no time did ROBBIN MCNEELY disobey commands, interfere with, or obstruct Defendants' execution of the warrant, or resist any attempts to be secured by Defendants during the execution of the warrant.

69.     At all relevant times, ROBBIN MCNEELY was fully compliant with the Defendants' commands and requests, and the laws of the State of Michigan and the United States Constitution.

70.     At no time did ROBBIN MCNEELY use force or threaten to use force, either verbally, or physically, against any Defendant, or any person, during the execution of the warrant.

71.     At no time did ROBBIN MCNEELY, who was not the subject of the search warrant,  pose a flight risk, risk of immediate harm to the public or any officer.

72.     Defendants are not entitled to qualified immunity where it has long been known, and clearly established, in the Sixth Circuit, that there is a prohibition against creating asphyxiating conditions by applying substantial, significant, or prolonged pressure upon an unarmed, handcuffed, detainee, who presents a minimal safety risk. *Griffith v. Coburn*, 473 F.3d 650 (6th Cir. 2007).

73.     As a free citizen, ROBBIN MCNEELY'S right to be free from excessive force under the circumstances presented in this case is absolute.

74.     At all times relevant hereto, ROBBIN MCNEELY was unarmed and did not pose a threat to the safety of Defendants or others.

75.     ROBBIN MCNEELY was collateral damage to an objective of the Defendants.

76.     The misconduct of all Defendants, directly and proximately caused ROBBIN MCNEELY to suffer numerous injuries include but not limited to the following:

a.     Wrongful Death;

b.    Reasonable medical, hospital, funeral and burial expenses;

c.    Extreme conscious pain and suffering, physical and emotional;

d.    Humiliation and / or mortification;

e.    Mental anguish;

f.    Economic damages;

g.    Loss of love, society, and companionship;

h.    Loss of gifts, gratuities, and other items of economic value;

i.    Parental guidance, training, and support;

j.    Exemplary, compensatory, and punitive damages allowed under Michigan and federal law;

k.    Attorney fees and costs pursuant to 42 USC § 1988; and

l.    Any and all other damages otherwise recoverable under federal law and the Michigan Wrongful Death Act, MCL 600.2922, *et seq.*

77.    The acts and/or omissions of all Defendants were willful, wanton, reckless, malicious, oppressive, and/or done with a conscious or reckless disregard for the constitutional rights of Plaintiff's decedent, ROBBIN MCNEELY.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in her favor against Defendants and in an amount in excess of seventy-five thousand dollars ($75,000) exclusive of costs, interest and attorney fees.

## COUNT II - GROSS NEGLIGENCE
### ALL DEFENDANTS

78.     Plaintiff hereby reincorporates each and every allegation set forth in the previous paragraphs as if fully set forth herein.

79.     At all times relevant hereto, pursuant to Michigan Law, all Defendants owed a duty to act with ordinary care for the safety of the public and specifically to ROBBIN MCNEELY.

80.     At all times relevant, all Defendants were acting within the course of their employment.

81.     Defendants, acting within the scope of their employment, breached this duty and were grossly negligent, as defined in MCL 691.1407(2)(c), when they acted so recklessly as to demonstrate a substantial lack of concern as to whether injury would result toward ROBBIN MCNEELY and with disregard for her health, safety, and constitutional and/or statutory rights, by the following conduct:

      a.     Using unjustified force against ROBBIN MCNEELY after she had been subdued, and was not posing a flight risk as she was not the target of the warrant;

      b.     Using unjustified force against ROBBIN MCNEELY as she was unarmed, and not threatening any officer or the public;

      c.     Using excessive and unjustified force against ROBBIN MCNEELY when she was following all commands and orders of Defendants, and not

resisting, obstructing or interfering with the execution of the warrant;

d.   Handcuffing ROBBIN MCNEELY in prone position and unreasonably placing downward pressure/force on her back, legs, torso, shoulders and/or neck, for a prolonged period, where she stated that she was having difficulty breathing;

e.   Failing to place ROBBIN MCNEELY in a recovery position (from the prone position) and uncuffing her hands from behind her back immediately after she stated she was having difficulty breathing;

f.   Failing to properly administer her breathing medications and treatment, i.e., giving her a cursory nebulizer "treatment" while her hands cuffed behind her back, thereby preventing her lungs from properly expanding, contracting and/or exchanging gases, and preventing the medication from working;

g.   Failing to contact emergency medical services timely where Defendants knew that ROBBIN MCNEELY'S medical condition was objectively serious and required immediate emergency medical attention and treatment because they wanted to complete their search of the premises;

h.   Acting with reckless disregard for the physical safety of ROBBIN MCNEELY;

i.   Acting with a willful and/or wanton disregard for the safety of ROBBIN MCNEELY;

j.   Acting in a reckless and/or grossly negligent manner as contemplated in MCL 691.1407(8)(a);

k.   All other breaches of duty identified in deposition testimony and/or answers to interrogatories and/or all other discovery, all of which is hereby adopted by reference; and

{01440205.DOCX}                        24

l.      Any and all breaches that become known through litigation.

82.     Defendants are not immune from liability as their grossly negligent and willful and wanton misconduct as described above is an exception to governmental immunity pursuant to MCL 691.1407(8)(a).

83.     As the direct and proximate result of the grossly negligent conduct of Defendants, ROBBIN MCNEELY suffered significant, serious, and permanent injuries resulting in her death.

84.     As the direct and proximate result of Defendants' above-described breaches of duty and gross negligence, Plaintiff and Plaintiff's decedent, ROBBIN MCNEELY, suffered the following serious and permanent injuries and damages:

a.      Wrongful Death;

b.      Reasonable medical, hospital, funeral and burial expenses;

c.      Extreme conscious pain and suffering, physical and emotional;

d.      Humiliation and / or mortification;

e.      Mental anguish;

f.      Economic damages;

g.      Loss of love, society, and companionship;

h.      Loss of gifts, gratuities, and other items of economic value;

i.      Parental guidance, training, and support;

j.     Exemplary, compensatory, and punitive damages allowed under Michigan and federal law;

k.     Attorney fees and costs pursuant to 42 USC § 1988; and

l.     Any and all other damages otherwise recoverable under federal law and the Michigan Wrongful Death Act, MCL 600.2922, *et seq.*

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in her favor against Defendants and in an amount in excess of seventy-five thousand dollars ($75,000) exclusive of costs, interest and attorney fees.

## COUNT III – FAILURE TO INTERVENE
## IN VIOLATION OF ROBBIN MCNEELY'S FOURTH AMENDMENT RIGHTS
## ALL DEFENDANTS

85.     Plaintiff hereby reincorporates each and every allegation set forth in the previous paragraphs as if fully set forth herein.

86.     All Defendants had a duty to intervene when Defendants violated ROBBIN MCNEELY'S rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983.

87.     This duty to intervene was violated by all Defendants during the unlawful force application and while Defendants acted with deliberate indifference to ROBBIN MCNEELY'S serious medical needs.

88.    Upon all information and belief, all Defendants had the opportunity and means to intervene, to prevent the unlawful, excessive, and unconstitutional force application to ROBBIN MCNEELY.

89.    Upon all information and belief, all Defendants failed to intervene which resulted in the infliction of excessive force, punishment, complete and deliberate indifference for her obvious and serious medical needs which required life-saving treatment, in violation of ROBBIN MCNEELY'S constitutionally protected rights.

90.    That Defendants are not entitled to qualified immunity as ROBBIN MCNEELY'S right to be free from excessive force was clearly established because Defendants: 1) actually observed, knew or reasonably should have known that excessive force would or was being used on ROBBIN MCNEELY, and 2) they had the means and opportunity to prevent the harm from occurring.  *Floyd v. City of Detroit,* 518 F.3d 398, 406 (6th Cir. 2008) (*quoting Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)).

91.    Defendants are further not entitled to qualified immunity as the Sixth Circuit has found that a failure to act can amount to deliberate indifference when an officer fails to provide aid to someone who he/she knows to be unable to breathe. *Jones v. City of Cincinnati*, 521 F.3d 555, 560 (6th Cir. 2008).

92.    The acts and/or omissions of all Defendants were willful, wanton, reckless, malicious, oppressive, and/or done with a conscious or reckless disregard

for the constitutional rights of ROBBIN MCNEELY.

93.     As a direct and proximate result of all Defendants' actions and inactions in denying ROBBIN MCNEELY of necessary medical assessment, evaluation, care, intervention, referral and treatment, she suffered constitutional rights violations, which resulted in multiple injuries, death, extreme physical, mental and emotional pain and suffering, pecuniary loss, including medical expenses, future wage loss and/or future loss of earning capacity, as well as all damages allowable under the Michigan wrongful death act and 42 U.S.C. §§1983 and 1988 including punitive damages, attorney fees and costs.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in her favor against Defendants and in an amount in excess of seventy-five thousand dollars ($75,000) exclusive of costs, interest and attorney fees.

## COUNT IV – 42 U.S.C. § 1983 DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS
### ALL DEFENDANTS

94.     Plaintiff hereby reincorporates each and every allegation set forth in the previous paragraphs as if fully set forth herein.

95.     As a citizen of the United States, ROBBIN MCNEELY, was entitled to all rights, privileges, and immunities accorded to all citizens of the State of Michigan and of the United States.

96.     Pursuant to the Eight Amendment (through the Fourteenth Amendment) of the United States Constitution, at all times relevant, ROBBIN MCNEELY had the right to be free from cruel and unusual punishment while under the custody and control of Defendants.

97.     At all relevant times, ROBBIN MCNEELY, although not the subject of the warrant, was in custody and control of Defendants, was handcuffed and not free to leave her own home.

98.     At all relevant times, no reasonable person in the same or similar circumstances as ROBBIN MCNEELY would have felt free to leave her home, or disobey the orders, commands and/or instructions of Defendants.

99.     While under the custody and control of Defendants, ROBBIN MCNEELY had a right to adequate and sufficient medical care and/or treatment for serious medical needs, such that her life would be preserved, and she would be free from needless unjustified and preventable pain, suffering, and deterioration of her health and well-being.

100.    That while being handcuffed on the ground, in a prone position, with Defendant, DET. MATT HARBURN, applying downward compressive pressure on her back, legs, torso, shoulders and/or neck, in clear view of the other Defendants, in the small apartment, ROBBIN MCNEELY told Defendants that she could not breathe, was having difficulty breathing and/or was having chest pain.

101.   The Defendants are not entitled to qualified immunity as the right of a person in custody, including ROBIN MCNEELY, to receive adequate medical care, was clearly established in this circuit. *Jones v. City of Cincinnati*, 521 F.3d 555, 560 (6th Cir. 2008); *Westlake v. Lucas*, 537 F.2d 857m 860 (6th Cir. 1976); *Brawner v. Scott Cnty.*, 14 F.4th 585, 591 (6th Cir. 2021).

102.   That once ROBBIN MCNEELY was finally lifted from the ground, still with her hands cuffed behind her back, she continued to complain that she felt ill, was having difficulty breathing and/or could not breathe and was having chest pain.

103.   ROBBIN MCNEELY begged Defendants for her medications and to give herself a breathing treatment using her nebulizer.

104.   Upon information and belief, Defendants, D/LT. JEREMY BREWER, TROOPER BRANDEE HART, and D/LT. JOHN DUFFY, denied ROBBIN MCNEELY'S request to give herself a breathing treatment with her nebulizer.

105.   Upon information and belief, because she was in obvious distress and in need of immediate medical attention, Defendants, D/LT. JEREMY BREWER, TROOPER BRANDEE HART and D/LT. JOHN DUFFY, gave ROBBIN MCNEELY a couple of "puffs" from her nebulizer, while her hands were still cuffed behind her back.

106.   This feigned attempted at medical assistance by Defendants, D/LT. JEREMY BREWER, TROOPER BRANDEE HART, and D/LT. JOHN DUFFY, in light of ROBBIN MCNEELY'S sufficiently serious medical needs, did not relieve any of ROBBIN MCNEELY'S symptoms as her lungs' ability to exchange critical gases, and to expel the carbon dioxide that was building in her blood stream, could not occur.

107.   Upon information and belief, ROBBIN MCNEELY'S medical condition continued to worsen, as she told all Defendants that the breathing treatment did not work, that she was feeling ill, she was still having difficulty breathing, she was hot, and she was having chest pain.

108.   Despite her complaints, the Defendants ignored her pleas for help while they completed their search of her home.

109.   Defendants' spurious attempts to provide ROBBIN MCNEELY medical treatment, by momentarily sticking a breathing tube in her mouth, when it provided her no relief, rather than calling immediately for emergency medical services, when they had subjective knowledge of her sufficiently serious medical condition, or where her serious medical condition was obvious, amounts to an unconstitutional denial of medical care and treatment.

110.   ROBBIN MCNEELY'S serious medical condition was so obvious that even a lay person, without any specialized medical training, education, experience, or knowledge, would realize that she needed to be transported to a hospital setting for immediate emergency medical attention.

111.   Despite ROBBIN MCNEELY'S obvious medical needs, all Defendants made the conscious decision to ignore her serious and life-threatening medical condition by unreasonably delaying calling emergency medical services.

112.   After a grossly excessive and reckless amount of time passed, and after ROBBIN MCNEELY, Defendants finally called for emergency medical services.

113.   Upon information and belief, ROBBIN MCNEELY, who was unable to ambulate on her own, was then taken to her front porch by Defendants, D/SGT. STEVEN COLOSKY, OFF. MATT JENSEN and OFF. ERIC EARNS, where she was barely able to stand.

114.   While on the front porch, ROBBIN MCNEELY leaned against the building pillar for support, continued to have trouble breathing, complained of chest pain, and was sweating profusely, in the presence of Defendants.

115.   Upon information and belief, it was at this time, that Defendants finally removed ROBBIN MCNEELY'S handcuffs.

116. While on the porch, ROBBIN MCNEELY's medical condition became dire as she started drooling and urinating upon herself in the presence of Defendants.

117. That upon information and belief, none of the Defendants provided any medical treatment or assistance to ROBBIN MCNEELY during this significant period of time that elapsed while they waited for EMS to arrive other than getting her a bar stool from inside of her home.

118. The acts and omission of Defendants, D/LT. JOHN DUFFY, D/SGT. PATRICK MOORE, D/TPR. DAN RICHTER, D/TPR. BRIAN SAVARD, D/LT. JEREMY BREWER, TROOPER BRANDEE HART, DET. ANDREW BABCOCK, DET. ANTHONY, BROOKS, D/LT. BRIAN WARDEN, SGT. DAVE POWELL, DET. DOUG McLEOD, DET. ERIC FREEMAN, D/SGT. STEVEN COLOSKY, OFF. MATT JENSEN, OFF. ERIC EARNS, DET. TYLER DUNKLEE, DET. MATT HARBURN, DET. JOHN BADAL, DET. RANDY FORMAN, and DET.TYLER STAMBAUGH, that demonstrate a conscious disregard for ROBBIN MCNEELY'S serious medical needs, that were deliberate or reckless in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known, include, but are not limited to:

    a.    Recklessly failing to obtain medical attention for ROBBIN MCNEELY within a reasonable time;

b.   Consciously, deliberately, or recklessly disregarding ROBBIN MCNEELY'S complaints of shortness of breath, difficulty breathing, and/or chest pain, where they knew that she was under a physician's care, suffering from multiple medical conditions, taking medications and/or utilizing medical devices, i.e. a nebulizer;

c.   Consciously, deliberately, or recklessly disregarding ROBBIN MCNEELY'S obvious, serious medical condition diagnosed by a medical doctor, by attempting to administer a breathing treatment, while she was cuffed with her hands behind her back, for no legitimate law enforcement reason other than to complete the execution of the search warrant, rather than to immediately contact emergency medical services;

d.   Consciously, deliberately, or recklessly disregarding ROBBIN MCNEELY'S obvious, serious medical emergency, after she was provided the cursory breathing treatment and it did not improve her condition, by taking her outside and making her wait on the porch for EMS to arrive while in restraints;

e.   Consciously, deliberately, or recklessly disregarding ROBBIN MCNEELY'S obvious, serious medical emergency by failing to provide any first aide or medical attention when she was uncontrollably drooling, had urinated on herself, was semi-conscious and unresponsive while waiting for EMS to arrive; and

f.      Any acts or omissions that become known through
the course of discovery and litigation.

119.   The conduct of all Defendants as described above, deprived ROBBIN

MCNEELY of her clearly established rights, privileges and immunities in

violation of the Eighth Amendment through the Fourteenth Amendment of the

Constitution of the United States.

120.   As Defendants' conscious disregard for ROBBIN MCNEELY'S

serious medical needs, were deliberate or reckless in the face of an unjustifiably

high risk of harm, and ROBBIN MCNEELY, did in fact, suffer great physical pain,

discomfort, loss of mental capacity, humiliation, degradation, anguish, and,

ultimately, died of cardiac arrest caused by a respiratory or cardiac event.

121.   Plaintiff and Plaintiff's decedent, ROBBIN MCNEELY, suffered the

following injuries and damages:

a.      Wrongful Death;

b.      Reasonable medical, hospital, funeral and burial
expenses;

c.      Extreme conscious pain and suffering, physical and emotional;

d.      Humiliation and / or mortification;

e.      Mental anguish;

f.      Economic damages;

g.      Loss of love, society, and companionship;

h.      Loss of gifts, gratuities, and other items of economic value;

i.      Parental guidance, training, and support;

j.      Exemplary, compensatory, and punitive damages allowed under Michigan and federal law;

k.      Attorney fees and costs pursuant to 42 USC § 1988; and

l.      Any and all other damages otherwise recoverable under federal law and the Michigan Wrongful Death Act, MCL 600.2922, *et seq*.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in her favor against Defendants and in an amount in excess of seventy-five thousand dollars ($75,000) exclusive of costs, interest and attorney fees.

Respectfully submitted by:

/s/ Jennifer G. Damico
JAMES J. HARRINGTON, IV (P65351)
JENNIFER G. DAMICO (P51403)
Attorneys for Plaintiff
19390 West 10 Mile Road
Southfield, MI 48075
(248) 355-5555
j.damico@fiegerlaw.com

Dated:  June 9, 2023